IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 1:17-cv-10419 ) ) |
| CLEAN RENTALS, INC., | ) ) |
| Defendant. | ) ) |

## COMPLAINT

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this complaint and alleges as follows:

### NATURE OF THE ACTION

1. This is a civil action brought against Clean Rentals, Inc. ("Clean Rentals"), pursuant to Sections 113(a) and (b) of the Clean Air Act ("Act"), 42 U.S.C. §§ 7413(a) and (b), seeking injunctive relief and civil penalties.

2. The claims alleged herein arise from: (a) Clean Rentals' 1998 construction, and subsequent operation, of an industrial laundry facility located at 355 Church Street in New Bedford, Massachusetts ("Facility") without obtaining a permit authorizing this construction and operation in accordance with the nonattainment New Source Review provisions of the Act, 42 U.S.C. §§ 7501-7515, and the implementing regulations set forth in the federally-approved and enforceable Massachusetts State Implementation Plan, codified at 310 Code of Massachusetts

Regulations ("CMR") 7.00 Appendix A; and (b) Clean Rentals' operation of the Facility, since May 1998, without having applied for or obtaining a Title V operating permit, in violation of the Title V permit provisions of the Act, 42 U.S.C. §§ 7661 through 7661f, and 310 CMR 7.00, Appendix C.

## JURISDICTION AND VENUE

3.  This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 113(b) of the Act, 42 U.S.C. § 7413(b).

4.  Venue lies in this District pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and (c), and 1395(a), because Clean Rentals is located in this District and because the alleged violations occurred in this District.

## NOTICE

5.  Notice of the nonattainment New Source Review violations alleged herein was provided to Clean Rentals and the Commonwealth of Massachusetts, Department of Environmental Projection ("MassDEP"), more than 30 days prior to the filing of this action, as required by Section 113(a)(1) of the Act, 42 U.S.C. § 7413(a)(1).

6.  Notice of commencement of this action has or will be been given to the MassDEP, as required by Section 113(b) of the Act, 42 U.S.C. § 7413(b).

## DEFENDANT

7.  Clean Rentals is a Massachusetts corporation.  It provides uniform and laundry services to businesses.  Clean Rentals operates three locations in New England, including the Facility, which does business under the name Clean Uniforms and More!.

8.  Clean Rentals is a "person" within the meaning of Section 302(e) of the Act, 42

U.S.C. § 7602(e).

9. At all times relevant to this action, Clean Rentals was and continues to be an "owner" and "operator" of the Facility, within the meaning of Section 113(b) of the Act, 42 U.S.C. § 7413(b), and the SIP.

## STATUTORY AND REGULATORY BACKGROUND

A. State Implementation Plans

10. Section 108(a) of the Act, 42 U.S.C. § 7408(a), requires EPA to identify and prepare air quality criteria for each air pollutant, emissions of which may endanger public health or welfare and the presence of which results from numerous or diverse mobile or stationary sources. For each such pollutant, Section 109 of the Act, 42 U.S.C. § 7409, requires EPA to promulgate national ambient air quality standards ("NAAQS") requisite to protect the public health and welfare.

11. Pursuant to Sections 108 and 109 of the Act, 42 U.S.C. §§ 7408 and 7409, EPA has identified and promulgated a NAAQS for ozone, 40 C.F.R. §§ 50.9 - 50.10, among other ambient air pollutants. Ground-level ozone causes irritation of respiratory systems and may cause permanent lung damage. Ozone, a main ingredient in urban smog, forms when volatile organic compounds ("VOCs") react with oxides of nitrogen in the presence of sunlight. To control ozone formation, EPA and states have sought to regulate VOC emissions.

12. Under Section 107(d) of the Act, 42 U.S.C. § 7407(d), each state is required to designate those areas within its boundaries where the air quality is better or worse than the NAAQS for each criteria pollutant, or where the air quality cannot be classified due to insufficient data. An area that does not meet the NAAQS is a "nonattainment" area. At the time

of its construction, the Facility was located in an area classified as nonattainment for ozone. 40 C.F.R. § 81.322.

13. Pursuant to Section 110(a) of the Act, 42 U.S.C. § 7410(a), each state is required to prepare a state implementation plan ("SIP") incorporating regulations designed to implement and enforce NAAQS for each pollutant in each region within the state in order to attain and maintain healthy air quality. A state must submit its SIP and any revisions to EPA for approval. Once EPA has approved a SIP, the federal government may enforce the SIP's requirements and prohibitions, and may also enforce any SIP-authorized permits, pursuant to Sections 113(a) and (b) of the Act, 42 U.S.C. §§ 7413(a) and (b).

    B.    The Nonattainment New Source Review Requirements

        1.    Statutory Requirements

14. Part D of Title I of the Act, 42 U.S.C. §§ 7501-7515, sets forth provisions for New Source Review ("NSR") requirements for areas designated as nonattainment for purposes of meeting the NAAQS. These provisions are referred to herein as "Nonattainment NSR." The Nonattainment NSR program is intended to reduce emissions of air pollutants in areas that have not attained NAAQS so that the areas make progress towards meeting the NAAQS.

15. Under Section 172(c)(5) of the Act, 42 U.S.C. § 7502(c)(5), a state is required to adopt Nonattainment NSR rules that include provisions that require permits for the construction and operation of new "major stationary sources" within nonattainment areas. Such permits are to conform to the requirements of Section 173 of the Act, 42 U.S.C. § 7503.

16. Section 173(a) of the Act, 42 U.S.C. § 7503(a), provides that permits to construct and operate new major stationary sources in nonattainment areas may be issued only if, among

other things, (a) sufficient offsetting emission reductions have been obtained to reduce existing emissions to the point where reasonable further progress towards meeting the ambient air quality standards is maintained, and (b) the source will comply with the lowest achievable emission rate ("LAER").

                2.        Massachusetts SIP Requirements

17.       Under Section 110 of the Act, 42 U.S.C. § 7410, Massachusetts adopted a SIP, which has been approved by EPA and contains federally-approved portions of the Massachusetts Air Pollution Control Regulations, codified at 310 CMR 7.00 *et seq* ("MassSIP"). EPA first approved the MassSIP in 1972, and has approved various amendments to the MassSIP since that time. The federally-approved version of the MassSIP as of 1994 is referred to herein as the "1994 MassSIP," and the federally-approved version of the MassSIP as of 2000 is referred to herein as the "2000 MassSIP."

18.       The 1994 MassSIP provided that "no person shall construct, substantially reconstruct, or alter any facility regulated herein that may cause or contribute to a condition of air pollution unless the plans, specifications, proposed Standard Operating Procedures, and the Proposed Maintenance Procedure for such facility have been submitted to [MassDEP] for approval and approval has been granted in writing." 310 CMR 7.02(2)(a). The 1994 MassSIP further provided that no approval would be issued for a major stationary source, or a major modification of such source, if located in a non-attainment area for the pollutant that rendered the source a major source or a major modification unless, inter alia, LAER pollution controls and offsetting emissions reduction requirements were met. 310 CMR 7.00, Appendix A.

19.       The 1994 MassSIP defined the term "major stationary source" to include any

stationary source that emitted or has the potential to emit 100 tons per year ("tpy") or more of VOCs, and further defined all major sources of VOCs to be major stationary sources for ozone. 310 CMR 7.00.

20. The 1994 MassSIP defined the term "construction" to include "any physical change or change in method of operation (including fabrication, erection, installation, demolition, or modification of a stationary source) which would result in a change of actual emissions." 310 CMR 7.00, Appendix A. The term "actual emissions" was defined as "the average rate, in tpy, that the facility actually emitted during the most recent two years of normal operations, or other time period which the [MassDEP] determines to be more representative of the sources [sic] operation." Id.

21. The 2000 MassSIP was essentially the same as the 1994 MassSIP, for purposes relevant to this action, except that it defined the term "major stationary source" to include any source that emitted or had the potential to emit greater than or equal to 50 tpy of VOCs (reduced from 100 tpy in the 1994 MassSIP), and further defined all major stationary sources of VOCs to be major stationary sources for ozone. 310 CMR 7.00, Appendix A, § 2.

22. The 2000 MassSIP defined the term "emission unit" to mean any part of a "stationary source" that emits or would have potential emissions of any pollutant subject to regulation under the Act, and the term "stationary source" to mean any building, structure, facility or installation that emits or that may emit any pollutant subject to regulation under the Act. 310 CMR 7.00, Appendix A, § 2.

    C.    <u>Title V Operating Permit Requirements</u>

23. Title V of the Act, 42 U.S.C. §§ 7661 through 7661f, establishes an operating

permit program for, inter alia, "major sources," which consolidates in one document federal and state air regulations and conditions that apply to a source's operation.

24. Under Section 501(2) of the Act, 42 U.S.C. § 7661(2), the term "major source" includes, inter alia, a "major stationary source," as defined in Section 302(j) of the Act, 42 U.S.C. § 7602(j).

25. Under Section 503(c) of the Act, 42 U.S.C. § 7661b(c), and 40 C.F.R § 70.5, major sources are required to apply for and obtain a Title V operating permit no later than 12 months after becoming subject to a federally-approved state Title V operating permit program, or such earlier date established by the state. Massachusetts has had an approved Title V operating permit program since May 15, 1996, which is set out in 310 CMR 7.00, Appendix C.

26. New major sources, which are defined to include all sources having a potential to emit at least 50 tpy of VOCs, must apply for a Title V operating permit no later than one year after commencement of operation. 310 CMR 7.00, Appendix C § (4)(a)(6).

27. Section 502(a) of the Act, 42 U.S.C. § 7661a(a), and 40 C.F.R. § 70.7(b) prohibit a major source from operating except in accordance with a Title V operating permit after the effective date of any permit program approved or promulgated under Title V of the Act.

D. Enforcement Provisions

28. Section 113(a)(1) of the Act, 42 U.S.C. § 7413(a)(1), authorizes EPA to bring a civil action under Section 113(b) of the Act against any person that is in violation of any requirement or prohibition of an applicable SIP at any time after the expiration of 30 days following the date on which EPA issued a notice of violation to such person and the state.

29. Section 113(a)(3) of the Act, 42 U.S.C. § 7413(a)(3), authorizes EPA to bring a

civil action under Section 113(b) of the Act against any person that is in violation of any requirement or prohibition under the Title V provisions of the Act.

30.     Section 113(b) of the Act, 42 U.S.C. § 7413(b), authorizes EPA to commence a civil action against any person who violates, *inter alia*, any requirement or prohibition of an applicable SIP or any requirement or prohibition under the Title V provisions of the Act, and to obtain appropriate relief, which includes injunctive relief and civil penalties of up to $25,000 per day for each violation.  The Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, codified at 40 C.F.R. Part 19, increased these statutory maximum penalties to: (1) up to $27,500 per day for each violation that occurred after January 31, 1997 through March 15, 2004; (2) up to $32,500 per day for each violation that occurred after March 15, 2004 through January 12, 2009; and (3) up to $37,500 per day for each violation that occurred after January 12, 2009.  73 Fed. Reg. 75340 (Dec. 11, 2008) and 78 Fed. Reg. 66643 (Nov. 6, 2013).

## GENERAL ALLEGATIONS

31.     The Facility is an industrial laundry.  At the Facility, Clean Rentals washes and dries various items, including uniforms, floor mats, furniture towels, shop towels (used to wipe oil and solvents from machinery) and print towels (used to wipe solvents and inks from printing presses).

32.     Clean Rentals first opened in 1919, and has operated at several locations in New Bedford.  In May 1998, Clean Rentals moved its industrial laundry operations to its current location at 355 Church Street in New Bedford.  Upon information and belief, the Facility was either newly constructed or newly renovated by Clean Rentals in 1998.  At that time, the

operation consisted of five 450-pound capacity washing machines and three 450-pound capacity dryers, plus two 75-pound capacity "pony" washing machines and two 75-pound capacity "pony" dryers.

33. At the time of its construction in May 1998, the Facility had the potential to emit at least 100 tpy of VOCs and was therefore a "major stationary source" and a "major source" under the Act and the 1994 MassSIP. As a "major stationary source," the Facility was subject to the Nonattainment NSR provisions of the Act and of the 1994 MassSIP. As a "major source," the Facility was also subject to the Title V operating permit requirements of the Act and 310 CMR 7.00, Appendix C. The Facility is also a "major stationary source" under the 2000 MassSIP.

FIRST CLAIM FOR RELIEF
(Failure to Comply with Nonattainment NSR Requirements)

34. Paragraphs 1 through 33 are realleged and incorporated herein by reference.

35. On or about May 1998, Clean Rentals began "construction, substantial reconstruction or alteration" and operation of its Facility, a new "major stationary source" with respect to VOCs, as defined by the Act and the MassSIP, in a nonattainment area for ozone, without applying for or receiving approval for this construction and operation through a Nonattainment NSR plan approval, as required by the MassSIP.

36. To date, Clean Rentals has not complied with the Nonattainment NSR requirements as set forth in the Act or the MassSIP for the construction or operation of the Facility.

37. Clean Rentals violated and continues to violate the Nonattainment NSR provisions of the Act and the MassSIP by constructing and operating a "major stationary source"

for VOCs in an ozone nonattainment area without complying with the Nonattainment NSR requirements as set forth in the Act and the MassSIP.

38.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Clean Rentals to injunctive relief and, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and codified at 40 C.F.R. Part 19, to civil penalties of up to $25,000 per day for each violation that occurred on or before January 31, 1997; of up to $27,500 per day for each violation that occurred after January 31, 1997 through March 15, 2004; of up to $32,500 per day for each violation that occurred after March 15, 2004 through January 12, 2009; and of up to $37,500 per day for each violation that occurred after January 12, 2009.

SECOND CLAIM FOR RELIEF
(Title V Violations)

39.     Paragraphs 1-38 are realleged and incorporated herein by reference.

40.     At the time of its construction in on or about May 1998, the Facility constituted a new "major source" of VOCs under the Act.

41.     On May 15, 1996, EPA granted interim approval of the Massachusetts Title V Program, as set forth at 310 CMR 7.00, Appendix C.  Pursuant to Section 503(c) of the Act, 42 U.S.C. § 7661b(c) and 40 C.F.R. § 70.5, Clean Rentals was required to apply for a Title V operating permit that identified all applicable requirements by no later than May 1999 (i.e., within 12 months after the Facility began operating).  Pursuant to Section 502(a) of the Act, 42 U.S.C. § 7661a(a), and 40 C.F.R. § 70.7(b), Clean Rentals is prohibited from operating the Facility after May 1999, except in accordance with a Title V operating permit.

42. Clean Rentals has not applied for a Title V operating permit for the Facility, in violation of Section 503(c) of the Act, 42 U.S.C. § 7661b(c), and 40 C.F.R. § 70.5.

43. From May 1999 to the present, Clean Rentals has operated the Facility without a Title V operating permit, in violation of Section 502(a) of the Act, 42 U.S.C. § 7661a(a), and 40 C.F.R. § 70.7(b).

44. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Clean Rentals to injunctive relief and, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and codified at 40 C.F.R. Part 19, to civil penalties of up to $27,500 per day for each violation that occurred after January 31, 1997 through March 15, 2004; of up to $32,500 per day for each violation that occurred after March 15, 2004 through January 12, 2009; and of up to $37,500 per day for each violation that occurred after January 12, 2009.

## PRAYER FOR RELIEF

WHEREFORE, based upon all the allegations set forth above, the United States of America respectfully requests that this Court:

1. Permanently enjoin Clean Rentals from operating the Facility except in accordance with the Act and any applicable regulatory requirements;

2. Order Clean Rentals to comply with the requirements of the Nonattainment NSR provisions of the Act and the MassSIP, including applying for appropriate permits and installing appropriate pollution controls;

3. Order Clean Rentals to apply for, obtain, and comply with a Title V operating permit, as required by the Title V provisions of the Act;

4. Order Clean Rentals to take other appropriate actions to remedy, mitigate, and

offset the harm to public health and the environment caused by the violations of the Act and the MassSIP;

  5. Assess a civil penalty against Clean Rentals of up $25,000 per day for each violation that occurred on or before January 31, 1997; of up to $27,500 per day for each violation that occurred after January 31, 1997 through March 15, 2004; of up to $32,500 per day for each violation that occurred after March 15, 2004 through January 12, 2009; and of up to $37,500 per day for each violation that occurred after January 12, 2009;

  6. Award the United States its costs and disbursements in this action; and

  7. Grant such other relief as this Court deems appropriate.

          Respectfully submitted,

          ELLEN M. MAHAN
          Deputy Section Chief
          Environmental Enforcement Section
          Environment and Natural Resources Division

          /s/ Rachel Evans King
          RACHEL EVANS KING
          Trial Attorney
          Environmental Enforcement Section
          Environment and Natural Resources Division
          United States Department of Justice
          PO Box 7611, Ben Franklin Station
          Washington, DC 20044-7611
          (202) 514-5471
          rachel.king@usdoj.gov

OF COUNSEL:

WILLIAM D. CHIN
Enforcement Attorney
U.S. Environmental Protection Agency, Region 1
Five Post Office Square
Suite 100
Boston, MA 02109-3912