IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,                    :

                Plaintiff,               :

        v.                                       :

                           Civil No. 1:17-cv-10419

CLEAN RENTALS, INC.,                         :

                Defendant.               :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**CONSENT DECREE**

# TABLE OF CONTENTS

I.     JURISDICTION AND VENUE ................................................................................... 1
II.     APPLICABILITY ....................................................................................................... 2
III.     DEFINITIONS ........................................................................................................... 2
IV.     CIVIL PENALTY ....................................................................................................... 3
V.     COMPLIANCE REQUIREMENTS ......................................................................... 4
VI.     REPORTING REQUIREMENTS ............................................................................. 9
VII.     STIPULATED PENALTIES .................................................................................... 10
VIII.     FORCE MAJEURE ................................................................................................. 13
IX.     DISPUTE RESOLUTION ....................................................................................... 14
X.     INFORMATION COLLECTION AND RETENTION ......................................... 15
XI.     EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ............................... 16
XII.     COSTS ..................................................................................................................... 17
XIII.     NOTICES ................................................................................................................. 17
XIV.     EFFECTIVE DATE ................................................................................................. 19
XV.     RETENTION OF JURISDICTION ........................................................................ 19
XVI.     MODIFICATION .................................................................................................... 19
XVII.     TERMINATION ...................................................................................................... 19
XVIII.     PUBLIC PARTICIPATION ................................................................................... 20
XIX.     SIGNATORIES/SERVICE ..................................................................................... 20
XX.     INTEGRATION ....................................................................................................... 20
XXI.     FINAL JUDGMENT ............................................................................................... 20

Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a complaint in this action concurrently with this Consent Decree, alleging that Defendant, Clean Rentals, Inc., violated provisions of the Clean Air Act ("Act"), 42 U.S.C. §§ 7401-7671q and the Massachusetts State Implementation Plan ("MA SIP"), which has been approved by EPA and contains federally-enforceable portions of the Massachusetts Air Pollution Control Regulations, codified at 310 Code of Massachusetts Regulations ("CMR") 7.00 *et seq*. Specifically, the United States alleges that Clean Rentals violated the Clean Air Act by constructing and operating an industrial laundry Facility in New Bedford, Massachusetts. The United States alleges that this Facility, constructed in 1998, emits volatile organic compounds, which are a precursor for ground-level ozone, and the amount of the Facility's potential emissions qualify the facility as a major source. Therefore, the United States alleges that Clean Rentals violated the Act by its construction and operation of the Facility without securing a permit in accordance with the nonattainment New Source Review provisions of the Act, 42 U.S.C. §§ 7501-7515, and the implementing regulations set forth in the MA SIP, codified at 310 CMR 7.00, Appendix A. In addition, the Complaint includes allegations that Clean Rentals' operation of the Facility, since May 1998, without having applied for or obtaining a Title V operating permit, is in violation of the Title V permit provisions of the Act, 42 U.S.C. §§ 7661-7661f, and 40 C.F.R. Part 70.

The defendant does not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint.

The Parties hereto recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 113(b) of the Act, 42 U.S.C. § 7413(b), and over the Parties. Venue lies in this District pursuant to 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and (c) and 1395(a), because Defendant is located in the District and because the alleged violations occurred in this District. For purposes of this Decree, or any action to enforce this Decree, Defendant consents to the Court's jurisdiction over this Decree and any such action and over Defendant and consents to venue in this judicial district.

2.    For purposes of this Consent Decree, Defendant agrees that the Complaint states claims upon which relief may be granted pursuant to Sections 113(a) and (b) of the Act, 42 U.S.C. §§ 7413(a) and (b).

## II.   APPLICABILITY

3.     The obligations of this Consent Decree apply to and are binding upon the United States, and upon Defendant and any successors, assigns, or other entities or persons otherwise bound by law.

4.     No transfer of ownership or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of the Decree are implemented.  At least 30 Days prior to such transfer, Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA Region 1 and the United States Department of Justice, in accordance with Section XIII (Notices).  Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Decree.

5.     Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree. Defendant shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

6.     In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III.   DEFINITIONS

7.     Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a)  "2013 Emission Testing" means the Emission Testing conducted at the Facility in March 2013 with the ozone treatment system operating that established an emission factor of 56.5 pounds of VOC per 1000 pounds of Print/Furniture Towels.

b)  "2014 Emission Testing" means the baseline Emission Testing conducted at the Facility in December 2014 without the ozone treatment system operating that established an emission factor of 78 pounds of VOC per 1000 pounds of Print/Furniture Towels.

c)  "Complaint" shall mean the complaint filed by the United States in this action;

d)  "Consent Decree" or "Decree" shall mean this Decree;

e)  "Day" shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

f) "Defendant" shall mean Clean Rentals, Inc.;

g) "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

h) "Effective Date" shall have the definition provided in Section XIV;

i) "Facility" shall mean Clean Rentals' industrial laundry located at 355 Church Street, New Bedford, MA;

j) "MassDEP" shall mean Massachusetts Department of Environmental Protection;

k) "Ozone Injection" shall mean the addition of ozone to the wash water as used by Clean Rentals in the 2013 Emission Testing.

l) "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral;

m) "Parties" shall mean the United States and Defendant;

n) "Print/Furniture Towel" shall mean either (1) a piece of fabric or other material, used to clean printing or graphic arts equipment, and received from a customer whose SIC code is 27 (NAICS 323) or whose business is otherwise identifiable as printing or graphic arts, or (2) a piece of fabric or other material, used in the process of stripping or finishing wood furniture, and received from a customer whose SIC code is 25 (NAICS 337) or whose business is otherwise identifiable as wood furniture manufacturing or refinishing.

o) "Section" shall mean a portion of this Decree identified by a roman numeral;

p) "Shop Towel" shall mean a piece of fabric or other material, used to clean mechanical devices or parts that are soiled by substances such as oil and/or grease.

q) "State" shall mean the Commonwealth of Massachusetts;

r) "Towels" shall mean Print, Furniture, and Shop Towels.

s) "United States" shall mean the United States of America, acting on behalf of EPA;

t) "VOC(s)" shall mean Volatile Organic Compound(s).

## IV.   CIVIL PENALTY

8.     Within 30 Days after the Effective Date, Defendant shall pay the sum of $200,000 as a civil penalty.

9.     Defendant shall pay the civil penalty due by pay.gov to the U.S. Department of Justice account, in accordance with instructions provided to Defendant by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the District of Massachusetts after the Effective Date.  The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which Defendant shall use to identify

all payments required to be made in accordance with this Consent Decree. The FLU will provide the payment instructions to:

>Mark Bodzioch
>President and CEO, Clean Uniforms and More
>333 Church Street
>New Bedford, MA 02746

on behalf of Defendant. Defendant may change the individual to receive payment instructions on its behalf by providing written notice of such change to the United States and EPA in accordance with Section XIII (Notices). At the time of payment, Defendant shall send notice that payment has been made to:

a.    EPA's Cincinnati Finance Office via email at cinwd_acctsreceivable@epa.gov or via regular mail at 26 W. Martin Luther King Drive Cincinnati, Ohio 45268; and

b.    the United States via email or regular mail in accordance with Section XIII. Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States v. Clean Rentals, Inc.* and shall reference the civil action number, CDCS Number, and DOJ case number 90-5-2-1-11182.

10.    Defendant shall not deduct any penalties paid under this Decree pursuant to this Section or Section VII (Stipulated Penalties) in calculating its federal income tax.

## V.    COMPLIANCE REQUIREMENTS

11.    Ozone Injection: Clean Rentals shall inject ozone into the wash water supply when laundering Towels.

12.    Best Management Practices: Within 30 days after the Effective Date, Clean Rentals shall implement the following best management practices to minimize fugitive VOC emissions from Towels:

a.    Minimize time between pick-up of soiled Towels at customer locations and drop-off of such Towels for laundering;

b.    Take best efforts to avoid receiving Towels that contain free liquids, including instructing customers that Clean Rentals does not accept Towels that contain free liquids. If any Towels containing or saturated with free liquids are accidentally received at the Facility, they shall be managed in accordance with applicable environmental laws;

c.    Launder soiled Towels received at the Facility as soon as possible, but do not take them out of containers or bags for sorting until the day they will be laundered;

d.    Keep containers or bags of soiled Towels received at the Facility closed until the Towels are sorted for washing;

e.    Minimize the time soiled Towels are open to the atmosphere during sorting and handling;

4

     f.    Keep wastewater trenches, settling pits, and equalization tanks covered at all times, except during necessary maintenance;

     g.    Calculate weight of daily throughput of soiled Shop Towels and Print/Furniture Towels based upon the number of loads processed daily, using factors generated pursuant to Paragraph 2 of the Testing Order included in EPA's June 12, 2012 "Clean Air Act Reporting Requirement and Testing Order;" and

     h.    Write a standard operating procedure for determining whether a customer is generating Shop Towels or Print/Furniture Towels.

13.   <u>Training:</u>

     a.    Within 30 days after the Effective Date, Clean Rentals shall develop written standard operating procedures and training materials describing soiled Towel processing procedures for plant staff and managers. Clean Rentals shall review and update, as necessary, these materials annually.

     b.    Within 60 days after the Effective Date, Clean Rentals shall use the training materials described in Paragraph 13.a to train all employees who handle soiled Towels regarding proper procedures for sorting, transporting, receiving, storing, processing, washing, and drying Towels.  Clean Rentals shall repeat this training annually.

14.   <u>Plan Approval:</u>

     a.    Within 30 days after the Effective Date, Clean Rentals shall submit to EPA for review and comment a draft Plan Approval application.  The application shall include:

     (1)    The definitions of Print/Furniture Towels, Shop Towels, and Towels found in Paragraph 7.

     (2)    The compliance requirements described in Paragraphs 11, 12, 13, and 15; and

     (3)    A temporary rolling 12-month VOC emissions limit for the entire Facility of 49 tons per year.  The application shall include a calculation of this limit using an emission factor of 15 pounds of VOC per 1000 pounds of soiled Shop Towels and an emission factor of 56.5 pounds of VOC per 1000 pounds of soiled Print/Furniture Towels.

     b.    Clean Rentals will revise the Plan Approval application in accordance with EPA's comments before submitting it to MassDEP under 310 CMR 7.02 for review and approval.

     c.    After submitting the application, and until a Plan Approval is issued, Clean Rentals will comply with the provisions of its Plan Approval application.

15.   <u>Capture and Control System</u>:

    a.    Within 240 days after receiving a Plan Approval for the Facility from MassDEP, Clean Rentals shall install a "Capture and Control System" at its Facility that will reduce VOC emissions by at least 85% over the results of the 2014 Emission Testing and include the following elements:

    (1)    Soiled laundry sorting tables: Install a hood, fan, and duct work at the soiled laundry sorting table such that VOCs from this area are routed to the thermal oxidizer.

    (2)    Wastewater treatment plant: Cover all equalization tanks and install vents, fans, piping, and duct work such that all exhaust from equalization tanks is routed to the thermal oxidizer.

    (3)    Washing Machines: Install a hood above the door of the washers that launder Towels, or use the existing top-of-washer bulkhead vent, and install a fan and ductwork such that VOCs from the washers are routed to the thermal oxidizer.

    (4)    Dryers: Install piping and ductwork such that all exhaust from any vents on dryers that are drying Towels is routed to the thermal oxidizer, and ensure that Towels are only dried in dryers connected to the thermal oxidizer.

    b.    Clean Rentals shall continuously monitor the temperature of the oxidizer that it will install as part of the Capture and Control System, and shall retain records of this monitoring consistent with Section X (Information Collection and Retention).

    c.    The Capture and Control System will be considered to be operating only when the oxidizer is at full operating temperature. Full operating temperature will be any temperature at or above the oxidizer's temperature at the time Clean Rentals measures overall VOC control efficiency during Post-Control Emission Testing and demonstrates compliance with the terms of this Decree. Clean Rentals shall permanently install a VOC monitor that will measure and record VOC concentrations at the inlet to the oxidizer. Clean Rentals shall operate the Capture and Control System at all times unless:

    (1)    the VOC monitor demonstrates that VOC concentrations have fallen below the applicable threshold below:

    (a)    prior to completion of Post-Control Emission Testing, VOC concentrations have fallen below 20 ppm;

    (b)    following completion of Post-Control Emission Testing, VOC concentrations have fallen below the baseline concentration established during Post-Control Emission Testing and approved by EPA; or

    (2)    the Capture and Control System is temporarily failing to achieve the parameters established during Post-Control Emission Testing or undergoing maintenance, in which case Clean Rentals shall not launder Towels until the Capture and Control System is repaired or maintenance is complete.

16.     Post-Control Emission Testing:

    a.     Within 120 days of installing the Capture and Control System, Clean Rentals shall submit to EPA for review and approval a test protocol for Post-Control Emission Testing. The test protocol shall call for Clean Rentals to separately test Shop Towels and Print/Furniture Towels, and will include the same test methods as were used in the 2013 and 2014 Emission Testing.

    b.     Clean Rentals shall conduct the Post-Control Emission Testing within 60 days of EPA approval of the test protocol.

    c.     Clean Rentals shall submit a test report to EPA for review and approval within 45 days after completing the Post-Control Emission Testing. The test report shall include:

        (1)     The overall VOC control efficiency;

        (2)     A proposed emission rate in pounds of VOC per 1000 pounds of soiled Shop Towels; and

        (3)     A proposed emission rate in pounds of VOC per 1000 pounds of Print/Furniture Towels.

        (4)     A proposed baseline concentration in ppm of VOCs at the inlet to the oxidizer pursuant to Subparagraph 15.c.(1)(b).

17.     Plan Approval Amendment. Within 30 days of receiving EPA approval of the Post-Control Emission Testing test report, Clean Rentals shall submit to EPA for review and comment a draft plan approval amendment.

    a.     The draft plan approval amendment shall specify provisions including proposed operating parameters, proposed monitoring/recordkeeping/reporting requirements, and any additional best management practices that were established during the Post-Control Emission Testing.

    b.     The draft plan approval amendment shall include a rolling 12-month VOC limit for the entire Facility of 49 tons per year. The amendment shall include a calculation of this limit on Shop Towel and Print/Furniture Towel emission factors established in Post-Control Emission Testing.

    c.     Clean Rentals will address EPA's comments on the draft plan approval amendment before submitting the plan approval amendment to MassDEP for review and approval pursuant to 310 CMR 7.02.

    d.     After submission of the final plan approval amendment, and until issuance of a final plan approval, Clean Rentals will comply with the provisions of its plan approval described in Paragraph 14.

18.     Recordkeeping. Clean Rentals shall maintain copies of the following records in accordance with Section X (Information Collection and Retention):

a.      Current written standard operating procedures for determining whether a customer is generating Shop Towels and/or Print/Furniture Towels;

b.      Current written standard operating procedures for employees and managers who handle or are otherwise responsible for soiled Towel sorting transporting, receiving, storing, processing, washing and drying;

c.      Current training materials and records demonstrating that all employees who handle or are otherwise responsible for soiled Towels have been trained on standard operating procedures;

d.      Records noting the dryer used to dry each load of Towels and the routing of the exhaust from such dryer, so as to establish whether the exhaust from each load of Towels was routed to the oxidizer;

e.      Monthly records of soiled Shop Towel and Print/Furniture Towel throughput in pounds, as calculated per Sub-Paragraph 12.g.;

f.      Records that demonstrate that the Capture and Control System is operating within the parameters established during the Post-Control Emission Testing including but not limited to records correlating the oxidizer's operating temperature and the VOC concentration at the inlet to the oxidizer on at least an hourly basis; and

g.      Monthly and 12 month rolling totals of actual VOC emissions based on Shop and Print/Furniture Towel emission factors per 1,000 pounds of Towels established during Post-Control Emission Testing.

19.      Mitigation. Clean Rentals will mitigate 19 tons of past excess VOC emissions within 5 years of installing the Capture and Control System pursuant to Paragraph 15. Clean Rentals may accomplish this mitigation by documenting emission reductions over and above the 85% emission limit noted in Paragraph 15.a, or by documenting other emission reduction approaches such as the purchase of emission reduction credits. Clean Rentals shall submit a report no later than 30 days after the fifth anniversary of the Effective Date documenting how it accomplished the mitigation requirement.

20.      Approval of Deliverables. After review of any plan, report, or other item that is required to be submitted pursuant to this Consent Decree, EPA shall in writing: (a) approve the submission; (b) approve the submission upon specified conditions; (c) approve part of the submission and disapprove the remainder; or (d) disapprove the submission.

21.      If the submission is approved pursuant to Paragraph 20, Defendant shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved. If the submission is conditionally approved or approved only in part pursuant to Paragraph 20(b) or (c), Defendant shall, upon written direction from EPA, take all actions required by the approved plan, report, or other item that EPA determines are technically severable from any disapproved portions, subject to Defendant's right to dispute only the specified conditions or the disapproved portions, under Section IX (Dispute Resolution).

22.     If the submission is disapproved in whole or in part pursuant to Paragraph 20 (c) or (d), Defendant shall, within 45 days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs.  If the resubmission is approved in whole or in part, Defendant shall proceed in accordance with the preceding Paragraph.

23.     Any stipulated penalties applicable to the original submission, as provided in Section VII, shall accrue during the 45 day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of Defendant's obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

24.     Permits.  Where any compliance obligation under this Section requires Defendant to obtain a federal, state, or local permit or approval, Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals. Defendant may seek relief under the provisions of Section VIII (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendant has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

## VI.     REPORTING REQUIREMENTS

25.     Defendant shall submit the following reports in addition to reports noted elsewhere in this Consent Decree:

a.     Twice annually on July 30 and January 30 after the lodging of this Consent Decree, until termination of this Decree pursuant to Section XVII (Termination), Defendant shall submit by transmission to the United States and EPA in accordance with Section XIII of this Decree (Notices), a biannual report for the first six months or second six months of the year, respectively, that shall include a detailed description of the status of all compliance measures; completion of milestones; problems encountered or anticipated (together with implemented or proposed solutions); and status of permit applications. The report shall also include a description of any non-compliance with the requirements of this Consent Decree and an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.

b.     If Defendant violates, or has reason to believe that it may violate, any requirement of this Consent Decree, Defendant shall notify the United States of such violation and its likely duration, in writing, within ten business Days of the Day Defendant first becomes aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.  If the cause of a violation cannot be fully explained at the time the report is due, Defendant shall so state in the report.  Defendant shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day Defendant becomes aware of the

9

cause of the violation.  Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to provide the notice required by Section VIII (Force Majeure).

26.     Whenever any violation of this Consent Decree or of any applicable permits or any other event affecting Defendant's performance under this Decree, or the performance of its Facility, may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after Defendant first knew of the violation or event.  This procedure is in addition to the requirements set forth in the preceding Paragraph.

27.     All reports shall be submitted to the persons designated in Section XIII (Notices).

28.     Each report submitted by Defendant under this Section shall be signed by an official of Defendant and include the following certification:

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I have no personal knowledge that the information submitted is other than true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

29.     This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

30.     The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

31.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VII.   STIPULATED PENALTIES

32.     Defendant shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section VIII (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

33.     Late Payment of Civil Penalty.  If Defendant fails to pay the civil penalty required to be paid under Section IV (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $1,000 per Day for each Day that the payment is late.

34. <u>Compliance Milestones.</u>

a. Subject to the provisions of Sections VIII and IX (respectively, Force Majeure and Dispute Resolution), the following stipulated penalties shall accrue per violation per Day for each violation of the compliance milestones:

| Penalty per Violation per Day | Period of Noncompliance |
|---|---|
| $500 | 1st through 14th day |
| $1,000 | 15th through 30th day |
| $1,500 | 31st day and beyond |

b. Compliance Milestones:

(1) Conduct ozone injection in accordance with Paragraph 11.

(2) Implement best management practices in accordance with Paragraph 12.

(3) Implement a training program for employees in accordance with Paragraph 13.b.

(4) Submit draft plan approval to EPA in accordance with Paragraph 14.

(5) Install the Capture and Control System in accordance with Paragraph 15.

(6) Conduct Post-Control Emissions Testing in accordance with Paragraph 16.

(7) Submit a draft plan approval amendment to EPA in accordance with Paragraph 17.

(8) Maintain records in accordance with Paragraph 18.

(9) Complete the required mitigation in accordance with Paragraph 19.

35. <u>Reporting Requirements.</u> The following stipulated penalties shall accrue per violation per Day for each violation of the reporting requirements of Section VI (Reporting Requirements):

| Penalty per Violation per Day | Period of Noncompliance |
|---|---|
| $250 | 1st through 14th day |
| $500 | 15th through 30th day |
| $1000 | 31st day and beyond |

36. Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

11

37.     Subject to its right to contest a stipulated penalty set forth herein, Defendant shall pay any stipulated penalty within 30 Days of receiving the United States' written demand. A written demand for payment of stipulated penalties will identify particular violation(s) to which the penalty relates, the penalty amount (as best can be estimated) that the United States is demanding for each alleged violation, the calculation method underlying the demand, and the grounds upon which the demand is based.

38.     The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

39.     Defendant may raise force majeure (Section VIII) as an affirmative defense to any demand for stipulated penalties by the United States and may invoke dispute resolution (Section IX) if a demand for stipulated penalties is made. Stipulated penalties shall continue to accrue as provided in Paragraph 36, during any Dispute Resolution, but need not be paid until the following:

    a.      If the dispute is resolved by agreement or by a decision of the United States and EPA that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the effective date of the agreement or the receipt of the United States' and EPA's decision or order.

    b.      If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within 30 Days of receiving the Court's decision or order, except as provided in subparagraph d, below.

    c.      If the dispute is appealed to the Court and the Court finds that the Defendant is not liable for any accrued penalties, then no such penalties shall be determined to be owing, except as provided is subparagraph d, below.

    d.      If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest, within 30 Days of receiving the final appellate court decision.

40.     Defendant shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 9, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

41.     If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

42.     The payment of penalties and interest, if any, shall not alter in any way Defendant's obligation to complete the performance of the requirements of this Consent Decree.

12

43.   <u>Non-Exclusivity of Remedy</u>.  Stipulated penalties are not the United States' exclusive remedy for violations of this Consent Decree.  Subject to the provisions of Section XI (Effect of Settlement/Reservation of Rights), the United States expressly reserves the right to seek any other relief it deems appropriate for Defendant's violation of this Decree or applicable law, including but not limited to an action against Defendant for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt.  However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

## VIII.   FORCE MAJEURE

44.   "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation.  The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as the event is occurring and (b) following the occurrence of the event, such that the delay and any adverse effects of the delay are minimized.  "Force majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

45.   If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendant shall provide notice orally or by electronic or facsimile transmission to EPA within 72 hours of when Defendant first knew that the event might cause a delay.  Within seven days thereafter, Defendant shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment.  Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure.  Failure to comply with the above requirements shall preclude Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure.  Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

46.   If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation.  EPA will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

47.   If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendant in writing of its decision.

13

48.     If Defendant elects to invoke the dispute resolution procedures set forth in Section IX (Dispute Resolution), it shall do so no later than 15 days after receipt of EPA's notice. In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraph 45. If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## IX.     DISPUTE RESOLUTION

49.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Defendant's failure to seek resolution under this Section of a dispute concerning a particular issue shall preclude Defendant from raising that issue as a defense to an action by the United States to enforce any obligation of Defendant arising under this Decree.

50.     Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Defendant sends the United States a written Notice of Dispute in accordance with the provisions of Section XIII (Notices). Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 30 Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 30 Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

51.     Formal Dispute Resolution. Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

52.     The United States shall serve its Statement of Position within 45 Days after receipt of Defendant's Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

53.     Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIII (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within 30 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief

14

requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

54.     The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court.  Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

55.     Standard of Review

a.     <u>Disputes Concerning Matters Accorded Record Review</u>.  Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 51 pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendant shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b.     <u>Other Disputes</u>.  Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 51, Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree and advances the objectives of the Consent Decree.

56.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 39.  If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VII (Stipulated Penalties).

## X.     INFORMATION COLLECTION AND RETENTION

57.     The United States, including EPA, and representatives of the United States, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

a.     monitor the progress of activities required under this Consent Decree;

b.     verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

c.     obtain samples and, upon request, splits of any samples taken by Defendant or its representatives, contractors, or consultants;

d.     obtain documentary evidence, including photographs and similar data; and

e.     assess Defendant's compliance with this Consent Decree.

58.    Upon request, Defendant shall provide EPA or its authorized representatives splits (if feasible) of any samples taken by Defendant.  Upon request, EPA shall provide Defendant splits (if feasible) of any samples taken by EPA.

59.    Until five years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

60.    At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendant shall deliver any such documents, records, or other information to EPA.  Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Defendant asserts such a privilege, it shall provide the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendant.  However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

61.    Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

62.    This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XI.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

63.    This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the date of lodging.

64.    The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 63.  This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal laws,

regulations, or permit conditions, except as expressly stated in Paragraph 63. The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendant's Facility, whether related to the violations addressed in this Consent Decree or otherwise.

65.      In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to the Facility or Defendant's violations, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 63 of this Section.

66.      This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, 42 U.S.C. §§ 7401-7611q, et seq., or with any other provisions of federal, State, or local laws, regulations, or permits.

67.      This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

68.      This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XII.   COSTS

69.      The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

## XIII.   NOTICES

70.      Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

17

As to the United States by email:       eescdcopy.enrd@usdoj.gov
                                        Re: DJ #90-5-2-1-11182

As to the United States by mail:        EES Case Management Unit
                                        Environment and Natural Resources Division
                                        U.S. Department of Justice
                                        P.O. Box 7611
                                        Washington, D.C.  20044-7611
                                        Re: DJ # 90-5-2-1-11182

As to EPA:                              Thomas McCusker
                                        Environmental Engineer
                                        U.S. EPA, Region 1
                                        5 Post Office Square
                                        Suite 100 - OES04-2
                                        Boston, MA 02109-3912
                                        Email: mccusker.tom@epa.gov

                                        William Chin
                                        Enforcement Counsel
                                        U.S. EPA, Region 1
                                        5 Post Office Square
                                        Suite 100 – OES04-4
                                        Boston, MA 02109-3912
                                        Email: chin.bill@epa.gov

As to Defendant:                        Mark Bodzioch, President and CEO
                                        Clean Uniforms and More
                                        333 Church Street
                                        New Bedford, MA 02746
                                        Email: Markb@cleanuniforms.com

                                        Stephen M. Leonard
                                        Cronin & Leonard
                                        70 Helene Road
                                        Waban, MA 02468
                                        Email: sleonard@croninleonard.com

71.     Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

72.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XIV.   EFFECTIVE DATE

73.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XV.   RETENTION OF JURISDICTION

74.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections IX and XVI (Dispute Resolution and Modification, respectively), or effectuating or enforcing compliance with the terms of this Decree.

## XVI.   MODIFICATION

75.     The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

76.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section IX (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 55, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVII.   TERMINATION

77.     After Defendant has (1) completed the mitigation requirement in Paragraph 19, (2) maintained continuous satisfactory compliance with all other requirements of this Consent Decree and Defendant's permit for a period of 5 years, and (3) paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, Defendant may serve upon the United States a Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.

78.     Following receipt by the United States of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

79.     If the United States does not agree that the Decree may be terminated, Defendant may invoke Dispute Resolution under Section IX.  However, Defendant shall not seek Dispute Resolution of any dispute regarding termination until 90 Days after service of its Request for Termination.

19

## XVIII. PUBLIC PARTICIPATION

80.      This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XIX.   SIGNATORIES/SERVICE

81.      Each undersigned representative of Defendant and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

82.      This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XX.    INTEGRATION

83.      This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. Other than deliverables that are subsequently submitted and approved pursuant to this Decree, the Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

## XXI.   FINAL JUDGMENT

84.      Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendant. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

Dated and entered this 2nd day of November 2017.

_____
UNITED STATES DISTRICT JUDGE

20

FOR THE UNITED STATES OF AMERICA:

3|13|17

Date

ELLEN M. MAHAN
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice

/s/ Rachel Evans King

RACHEL EVANS KING
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC  20044-7611
(202) 514-5471

21

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:

03/01/2017
Date

SUSAN STUDLIEN
Director, Office of Environmental Stewardship
U.S. Environmental Protection Agency, Region 1

WILLIAM CHIN
Enforcement Counsel
Office of Environmental Stewardship
U.S. Environmental Protection Agency, Region 1

22

FOR CLEAN RENTALS, INC.:

2-19-17
_____
Date

_____
Mark Bodzioch, President and CEO
Clean Uniforms and More
333 Church Street
New Bedford, MA 02746

2/19/2016                                    /s/ Stephen M. Leonard
_____                    _____
Date                                         Stephen M. Leonard
                                             Cronin & Leonard
                                             70 Helene Road
                                             Waban MA 02468
                                             (617) 697-4069
                                             sleonard@croninleonard.com

23